*July*, 1826.

**McComas and wife, Gould and wife, and others, heirs and devisees of Chotard, *against* Gannard and others.**

The Act of Congress for the relief of the legal representatives of *Henry Willis*, does not authorize them to enter and obtain title for town lots.

*SARAH F. CHOTARD* filed her bill in the Circuit Court of *Tuscaloosa* County, charging that *Henry Willis*, her first husband, was entitled to certain lands on *Bayon Sara*, which were sold by the United States ; that, as indemnity for the same, an Act of Congress was passed on the 8th of *May*, 1820, entitled " An Act for the relief of the legal representatives of *Henry Willis*," authorizing them to enter without payment in any land office in the States of *Alabama* or *Mississippi ;* and in such quantities, agreeable to the surveys of the United States, as the claimants may desire, a quantity not exceeding 1300 arpens ; for which the Register or Registers of the Land Offices aforesaid shall issue the necessary certificates, on return of which to the general Land Office, patents shall issue, &c.    The said Henry, by his last will and testament, devised all his estate real and personal to her and their infant son, *Lewis Willis*, to be equally divided ; that after the death of her said husband she gave birth to *Anna S. Willis*, his posthumous child, who has since married *Josiah H. McComas ;* and after her birth *Lewis Willis* died an infant, intestate.    That complainant, since the death of her first husband, married *John Chotard*, who has departed this life ; that by a covenant between her and said *McComas* and wife for the division of the estate of said *Henry Willis*, she is entitled to enter and obtain certificates and patents for a moiety of the lands mentioned in the Act of Congress as her separate property ; that after the passage of this Act, the lands on which *Fort Charlotte* stood, in the city of *Mobile*, were, by authority of the United States, surveyed into town lots ; and on the 4th of *November*, 1820, she presented to the Register of the Land

JULY, 1826.

McComas and others,

v.

Gannard and others.

Office the evidences of her right to enter one half of the 1300 arpens as aforesaid, and demanded that he should receive her entry for certain of the lots surveyed as aforesaid, amounting to about 32 arpens; but the Register refused to allow the entry or grant the certificates, and proceeded to sell the lots to the several persons named as defendants in the bill, who have since obtained patents therefor. That she publicly protested against the sale, and at the sale gave notice of her claim and prior equity to all who became purchasers. That she had not then, nor has she yet, located elsewhere the portion of her claim which she then applied to enter on the lots. The bill prays that the sale of the lots may be vacated, or that the several purchasers may be considered as trustees for complainant. That the legal title may be decreed to her, and for general relief. The complainant having died, her heirs and devisees filed their bill of revival. The defendants demurred, and the Circuit Court, after argument thereon, decreed that the bill be dismissed with costs. The heirs and devisees appealed to this Court.

*Acre, Kelly,* and *Hutchinson,* for appellants.

*Crawford* and *Hitchcock* for appellees.

Judge *Saffold* delivered the opinion of the majority of the Court.

The only question to which the attention of the Court has been directed, is, Were the legal representatives of *Henry Willis,* by the Act of Congress which has been cited, authorised to locate any portion of their claim on town lots in *Mobile,* planned and surveyed under the direction of the President of the United States?

By the Act of Congress, passed in 1818, entitled "An "Act authorising the disposal of certain lots of public "ground in the city of *New-Orleans* and town of *Mobile*" the President of the United States was authorised, whenever it should be consistent with the public interest, to abandon the use of the barracks of *Fort Charlotte,* and to cause the ground whereon it stood to be surveyed and laid off into lots with suitable streets and avenues; and it is provided that such lots shall afterwards be offered at public sale at the town of *Mobile,* in the same manner and on the same conditions and terms of credit as is provided by law for the sale of the public lands of the United States; and that patents shall issue therefor accordingly.

It appears that two tracts of land, to which the heirs of

JULY, 1826.

McComas and
others.
v.
Gannard and
others.

*Willis* had been entitled, were sold by the United States; and to provide an indemnity, the Act for their relief was passed. This Act constitutes a compact between the United States and the claimants, and requires a construction corresponding with the true intent and meaning of the parties.

In a strictly literal or legal sense, town lots are lands; but in the usual acceptation of the terms, town lots and lands are different. A grant or other conveyance of a tract or other considerable parcel of land does not convey the idea of town lots. The expressions, town lots and lands, are generally used as terms distinguishing small lots in a town, and larger tracts or parcels suitable for agricultural and other ordinary purposes.

The Act of Congress directs that the entries shall be made in any land office, &c., and in such quantities " agreeably to the surveys made by the United States," as the claimants may desire. Was the Act intended to apply to any special survey which the President may have been authorised to direct for a particular purpose? or does it refer to the general plan of surveys adopted by the government as preparatory to the disposal of the public lands? For the last 25 to 30 years a general uniform plan (with a few slight modifications) has been established. This plan is to survey the public lands of the United States into townships and sections, and to set up marks for the subdivision of the sections.

By other Acts of Congress, the President has been authorised to cause other public lands to be reserved from public sale for various other specific purposes, which the policy of the government has been supposed to require; as for timber useful for the navy, for forts, for other towns, &c. The Act for the relief of the Representatives of *Henry Willis,* makes no express reservation from this right of entry; and if it is to be construed as conferring an unqualified right to locate any of the public lands without regard to public policy or to the plan or object of the survey, injustice of the most mischievous tendency might result to the government, and lands be located, which Congress evidently did not intend to permit, and which it cannot be presumed were in the contemplation of the Complainants when the Act passed.

Another view of the case well worthy of consideration is, That by laying out a part of the public domain into town lots, the government has incurred expenses not incident to surveys on the general plan; and by streets, avenues, &c.

has curtailed the quantity of land to be sold by about one half, while its value is greatly enhanced.

To permit the claimants to make their locations on the lots would give them the benefit of the increased value of the ground arising from the peculiar attention and additional expense of the government; while the quantity to be located would be a greatly reduced portion of the original tract, the streets, &c. not being computed as parts of the location.

The majority of the Court is of opinion that the decree of the Circuit Court must be affirmed.

The Chief Justice not sitting.

This case was afterwards taken by writ of Error to the Supreme Court of the United States, and the judgment was there affirmed.